Talcott *v.* Gray.

GEORGE S. DURYEE, commissioner, &c., complainant, UNITED STATES CREDIT SYSTEM COMPANY, defendant.

JAMES TALCOTT, appellant,

*v.*

GEORGE R. GRAY, receiver of said defendant company, respondent.

[Filed March 6th, 1899.]

A certificate of guarantee issued by the United States Credit System Company construed in certain respects.

On appeal.

Incorporated 1888.

No. 2,377–9.                                                           $15,000.

UNITED STATES CREDIT SYSTEM COMPANY,
Of Newark, N. J,

Copyrighted 1888, 1889, 1890, by L. Maybaum.·
Copyrighted 1888, 1889, 1890, 1891, by United States Credit System Company, Proprietors.
Copyrighted 1888, 1889, 1890, 1891, by Maybaum and United States Credit System Company.
Copyrighted 1889, 1890, 1891, 1892, 1893, by United States Credit System Company.
System of this company (means of guarantee) patented December 22d, 1891, No. 465,485.

CERTIFICATE OF GUARANTEE.

On the receipt of $710, guarantee fee, and the compliance of James Talcott with all the provisions of this contract, the United States Credit System Company agrees to pay to said above-named party such a sum not exceeding $15,000, in excess of, as per special attached on the total, all sales and shipments of merchandise made between the 1st day of February, 1893, and the 31st day of January, 1894, as said above-named party may actually lose on such shipments on legally ascertained insolvent debtors whose insolvency occurred after payment of said guarantee fee, of whom the United States Credit System Company

had been notified on its notice of failure blanks, with all questions thereon answered, within ten days after said above-named party had information of such insolvency, and who, in the latest existing book of R. G. Dun & Company, prior to each shipment of merchandise, were rated from the capital mark of "J" and upward, with either the first or second credit mark for such respective capital letter mark, or "K 3½," and for an amount not exceeding twenty-five per cent. of such lowest capital rating, but no account, however, shall exceed $10,000.

All amounts procured and procurable shall be deducted from all claims, after which twelve and one-half per cent. shall be deducted from the net amount remaining. In consideration of above deductions all claims shall remain the property of said above-named party. Only the losses of the above-named party occurring on his or their sales of merchandise usually dealt in by him or them, and only to the extent of the risk assumed by such party, shall be included in the calculation of losses subject to all other terms of this contract. Where any claim exceeds the amount covered by this certificate the amount procured or procurable thereon shall be deducted *pro rata*.

Losses, notice of which as provided above not having been received by the United States Credit System Company, at its home office, at Newark, New Jersey, up to the date of expiration of this certificate, shall not be included in the calculation of losses thereunder. Covered losses, occurring after this certificate expires, on shipments made during its term are provable under the renewal hereof as if the goods had been shipped thereunder; provided, the United States Credit System Company has issued and received payment for such renewal on or before the expiration hereof. If this certifiate has been paid for on or before the date of expiration of the certificate held by above-named party last prior to this one, then and in that case losses occurring during the life of this certificate, on goods shipped during the term of the last prior one, shall be included in the calculation of losses under this certificate in the same manner as if the goods had been shipped and the loss had occurred during the life of this certificate.

Talcott *v.* Gray.

Excess losses shall be adjusted and paid by the United States Credit System Company within sixty days after verified final proof of loss has been filed at the home office of said company, at Newark, New Jersey, less the amounts procured and procurable at the time of payment by this company, and the twelve and one-half per cent. as above mentioned.

This proof of loss shall specifically show the facts upon which the above-named party bases the belief that the claims are a loss, which facts must be sufficient to prove such claims a loss; a statement of the amount of all sales and shipments between and including date of beginning and expiration of this certificate; the names of the person or persons to whom the goods were sold on whom losses were made; date of shipment; amounts paid on account; amounts secured, guaranteed or indemnified; amounts of settlements accepted; the discounts the debtor or debtors would have been entitled to receive at the time of insolvency, had they then paid, which shall be deducted; said verified proof of loss must be filed within ten days after the certificate expires, or else all claims under this certificate shall be forever barred.

The amount of goods shipped before a party was covered by this certificate, remaining unpaid at the time of such insolvency, shall be deducted from the twenty-five per cent. or $10,000 limits. Losses on claims under extension at time of payment of the guarantee fee above named shall not be included in the calculation of losses.

It is understood and agreed that if the said above-named party should sell a party whose name does not appear in the latest book prior to the shipment of the goods, owing to the fact that such party had gone into business since said latest book was issued, and such a party receives a rating printed in the next subsequent book sufficient to be covered according to this certificate, then and in that case the goods shipped between said latest book, prior to the shipment of the goods and said next subsequent book, shall be covered by this certificate as if said rating in said next subsequent book had existed prior to the shipment of the said goods.

There shall be no liability on the part of the company unless

Talcott *v.* Gray.

the said above-named party shall have uninterruptedly continued or carried on his or their said business in the usual manner for the full period of the term herein mentioned and set forth ; and should he or they not so continue fifty per cent. of the guarantee fee received shall be returned in full satisfaction of all claims against this company.

The application signed by the above-named party shall and does hereby form a part of this contract.

In witness whereof the said United States Credit System Company has caused its corporate seal to be hereto affixed and these presents to be signed by its president and attested by its secretary, at Newark, N. J., this 11th day of August, 1893.

WM. H. F. FIEDLER,
*President.*

[Seal.] FRED. M. WHEELER,
*Secretary.*

[Rider attached to Policy.]

In issuing the annexed certificate No. 2,377–9 to James Talcott, it is understood and agreed that this company shall not be liable in whole or in part for any loss wholly or partly guaranteed, indemnified secured or in any other manner protected under bond No. 960, issued to said James Talcott by the American Credit Indemnity Company, dated February 1st, 1893, and expiring January 31st, 1894. Under such bond the same James Talcott is first to bear an initial loss of $12,000, plus one-third to be thereto added, as in such bond provided, and the face of such bond guarantees, indemnifies or secures $12,000 in excess of such initial loss, the said initial loss being the loss to be first borne by the said James Talcott under said bond on his entire sales and shipments, with the exception of the woolen department and New Britain hosiery department, on sales not exceeding $2,400,000 ; and should the sales exceed that sum the same proportion is to be added for sales in excess thereof ; and whereas the losses which may occur up to January 31st, 1894, in accordance with the terms and conditions of the annexed certificate No. 2,377–9, may exceed the amount covered by said bond of

Talcott v. Gray.

said American Credit Indemnity Company, it is understood and agreed that should the losses of said James Talcott on such sales and shipments, and during such period, amount to a sum so that the said American Credit Indemnity Company is obliged to pay the sum of $12,000, in accordance with the terms and conditions of said bond, then and in that case the United States Credit System Company is to pay the losses occurring in excess thereof, not exceeding, however, the amount of said $15,000 guarantee, less deductions, in accordance with the terms and conditions of this certificate.

It is further understood and agreed that the said James Talcott shall, within ten days after ascertaining any insolvency, file duplicates with the United States Credit System Company of any losses or claims that are filed with the American Credit Indemnity Company under its bond ; and it is further agreed that a copy of the bond as is now held by said James Talcott, of the American Credit Indemnity Company, shall also be filed with the United States Credit System Company. All other terms and conditions of certificate No. 2,377–9 are to remain in force.

[Rider attached to Policy.]

It is further agreed and understood that advances made to manufacturers upon merchandise in the ordinary course of business of commission merchants shall be included in the sum covered under the conditions of this certificate, and where the manufacturer to whom such advances have been made has become insolvent and such merchandise has to be sold for less than the amount of such advances, the net loss resulting from such advances shall be included in the calculation of losses under this certificate.

It is agreed and understood that the word "ten," in line 8 of annexed certificate No. 2,377–9, is changed to "twenty" days. It is further agreed that the rating of "L 3½" is covered for $150 and the rating of "M 3½" for $50. It is further agreed that the company waives the filing of a copy of the bond of the American Credit Indemnity Company; and it is also

agreed that should losses of account occur during the last ten days prior to the expiration of said annexed certificate and the said James Talcott should not ascertain such losses in time to file the same under said certificate prior to its expiration, it is agreed and understood that such losses occurring within the last ten days prior to the expiration of said certificate said James Talcott shall have the right to file such losses at the home office of said company not later than February 10th, 1894.    It is further agreed that the words " New Britain Hosiery Department," appearing in the special attached, be in the same and is hereby changed to "American Hosiery Company Department."

L. MAYBAUM,

Dated August 15th, 1893.                                    *Actuary.*

BOND OF INDEMNITY ATTACHED TO COMPLAINT.

| Premium. | THE AMERICAN CREDIT INDEMNITY | Number |
|---|---|---|
| $348. | COMPANY. | 960. |

Incorporated 1891, under the Law of Louisiana.

Central Office : St. Louis, Mo.

The American Credit Indemnity Company grants, bargains and sells unto James Talcott, of New York city, this its bond of indemnity, guaranteeing the said James Talcott against loss to the extent of and not exceeding $12,000, resulting from insolvency of debtors over and above an annual net loss of $12,000, first to be borne by the said James Talcott on total gross sales and deliveries of goods, wares or merchandise, amounting to $2,400,000 or less, said sales and deliveries to be made to firms, corporations or individuals actively engaged in commercial or mercantile pursuits in the United States of America, between the date hereof and the 31st day of January, 1894, both days inclusive.

This bond is issued and accepted upon the condition that the terms and conditions printed or written by the company upon the back of this bond are accepted by the said James Talcott as part of this contract as fully as if they were recited at length over the signatures hereto affixed.

Talcott *v.* Gray.

In witness whereof the American Credit Indemnity Company has caused its corporate seal to be hereto affixed and this bond to be signed by its president and secretary, in the city of New Orleans, Louisiana, this 1st day of February, 1893.

S. M. Phelan,
*President.*

[Seal.]     ·

Ryland D. Rash,
*Secretary.*

*Conditions under which this Bond of Indemnity is Sold.*

3. No credit is covered by this bond unless the debtor or debtors shall have, in the latest published book of the R. G. Dun & Company Mercantile Agency, at the date of each shipment of goods, included in the indebtedness to be proven one of the ratings of the said mercantile agency, both as to capital and credit as given below.  The amount to be proven under this bond against any one insolvent debtor is limited to twenty-five per cent. of the lowest amount of the capital rating given by said agency where the highest credit rating follows, and to twenty-five per cent. of such lowest capital rating where the next highest credit rating follows, and no account against any one insolvent debtor shall be proven for more than $10,000. The books of the said named mercantile agency shall respectively cover shipments made from the first day of the month named and borne by the said book to the first day of the month named and borne by the next subsequent book, but where a report reduces or withdraws a rating in a book, shipments made after such report was issued shall be governed by the said changed rating.

4. Proof of loss must be made by the indemnified to the American Credit Indemnity Company, at its office in St. Louis, Missouri, upon the blanks furnished and in the manner prescribed by said company, within twenty days after knowledge of the insolvency of any debt shall have been received by the indemnified or his or their agent; otherwise such claim shall be barred.

5. The basis of the net loss fixed in this bond is one-half of one per cent. on total annual gross sales by the indemnified of $2,400,000, and should such total annual gross sales exeeed said. amount the net loss to be borne by the indemnified, under this bond, shall increase in like ratio.

6. Liability under this bond is limited to actual sales of goods, wares or merchandise owned, consigned to, sold and delivered by the indemnified.

8. No claim for loss can be proven after the expiration of this bond, provided, however, that in case this bond is renewed at or before its expiration the loss resulting after said date of expiration, upon shipments made during the term of this bond, may be proven under such renewal.

9. In all cases where the indemnified under this contract shall hold other security, guarantee indemnity or preference, or shall have instituted attachment or replevin proceedings against any insolvent debtor covered under this bond, the amounts realized therefrom shall be deducted before the loss under this bond shall be adjusted.

12 *a.* To simplify adjustment and to avoid disputes, it is agreed that such sum of "gross loss" shall be the limit to be borne by the indemnified, as less twenty-five per cent. will equal the agreed amount of annual net loss; all claims making up such said sum of gross loss to remain the property of the indemnified, the company relinquishing its claims except as hereinbefore provided.

12 *b.* When any claim shall be allowed beyond the gross amount agreed to be borne by the indemnified, this company shall adjust and settle same, first deducting twenty-five per cent. thereof, in consideration of which such claims shall remain the property of the indemnified. The limit of excess loss claims to be proven hereunder to be $12,000.

S. M. PHELAN,
*President.*

[Seal.]

RYLAND D. RASH,
*Secretary.*

Talcott *v.* Gray.

12 *c.* Final proof of loss shall be forwarded to the central office of this company, upon the blanks furnished, and in the manner prescribed by the company, within twenty days after the expiration of this bond, and the amount due by this company, under such final proof of loss, shall be payable within sixty days after adjustment.

13. The premium upon this bond is due and payable upon its delivery, by check or draft to the order of the American Credit Indemnity Company, and if such payment shall not be made within five days following its delivery, this bond shall be void at the option of the company, and no losses are provable under this bond which occur prior to the payment of the premium.

It is agreed and understood that this bond is to cover the entire sales of James Talcott and the New Britain Knitting Company, excepting woolen goods department, now under the management of Look & Braman.

S. M. Phelan,
*President.*

[Seal.]                          Ryland D. Rash,
*Secretary.*

In consideration of the lapsing of certificate No. D 399, series H, of the United States Credit System Company, Newark, New Jersey, it is agreed that all losses provable under a renewal of same may be proven hereunder, subject to the terms and conditions of this bond.

S. M. Phelan,
*President.*

[Seal.]                          Ryland D. Rash,
*Secretary.*

It is further agreed and understood that advances made to manufacturers upon merchandise in the ordinary course of business of commission merchants shall be included in the sum covered under the conditions of this bond, and where the manu-

facturer to whom such advances have been made has become insolvent, and such merchandise has to be sold for less than the amount of such advances, the net loss resulting from such advances shall be included in the calculation of losses under this bond.

S. M. PHELAN,
*President.*

RYLAND D. RASH,
*Secretary.*

[Seal.]

*Mr. Edward M. Colie,* for the appellant.

*Mr. Howard W. Hayes,* for the respondent.

The opinion of the court was delivered by

DIXON, J.

This controversy turns on the meaning of the certificate of guarantee issued by the United States Credit System Company and the bond of indemnity issued by the American Credit Indemnity Company, which are above set forth. Only the conclusions of the court on the points involved will be stated, leaving the account to be settled in the court below, as suggested by counsel on the argument.

The certificate of guarantee is supplementary to the bond of indemnity; but only sales of merchandise and advances to manufacturers made during the year beginning February 1st, 1893, are within the scope of the certificate, while such sales and advances made during the preceding year are also, by force of the renewal clause, included within the scope of the bond. For this reason it is equitable that the appellant's "initial loss," $16,000, and the indemnity fund under the bond, $12,000, should be applied first to the losses on transactions taking place before February 1st, 1893. As those losses do not amount to the aggregate of those sums, $28,000, the balance of that aggregate should be applied to the losses on the transactions of the

later year ; the residue of these losses is the sum to which the respondent's certificate should be applied.

In considering claims for merchandise sold, we understand that no account of this nature exceeds $10,000, and therefore the $10,000 clause of the certificate is here irrelevant.

To ascertain the loss occurring on the insolvency of any person owing for goods sold, there should be deducted from the balance owed at the date of insolvency—

*First.* Charges in the account for goods returned or replevied after insolvency, before April 10th, 1894, the date for adjustment according to the terms of the certificate.

*Second:* Discounts allowable on the balance if it had been paid at the date of insolvency.

*Third.* Amounts procured on account before April 10th, 1894.

*Fourth.* Amounts procurable on April 10th, 1894, by which we understand amounts likely to be received on the account from any source other than the mere personal responsibility of the insolvent.

*Fifth.* Twelve and a half per cent. of the net balance remaining, which we understand to be the stipulated value of the personal responsibility of the insolvent, the last three deductions being the consideration for which the claim is to remain the property of the creditor.

The loss on the account for advances made to Atwood is within the scope of the certificate, and is subject to the conditions of the certificate, except so far as the conditions are modified by the terms of the rider relating to them.

One of those conditions is that no account shall exceed $10,000, and, if it does, the amount procured or procurable thereon shall be deducted *pro rata.* But we think this condition is modified by the terms of the rider to this extent, that the *account* which is not to exceed $10,000 is the balance remaining after crediting upon the advances the proceeds of sale of the merchandise in the hands of the creditor at the time of insolvency, so far as the merchandise had been sold at the date of adjustment, and the market value of the merchandise then unsold. The balance thus found, to the amount of $10,000, is to be included

in the calculation of losses under the certificate. This balance, not exceeding $10,000, will be subject to further reduction by the amounts procured or procurable from any source other than the merchandise on which the advances were made and Atwood's personal responsibility, and also by the twelve and a half per cent. for which the claim is to remain the property of the creditor.

So much of the advances made to Atwood before February 1st, 1893, as had not been paid at the time of his insolvency should be paid out of the goods then in the hands of the appellant, before the proceeds of those goods are applied to the payment of the advances made after February 1st, 1893. The effect of this will be, we understand, to show that there was no loss on the advances made in the earlier year.

The decree below should be reversed and the cause remitted to the court of chancery, in order that the appellant's claim against the receiver may be adjusted according to the foregoing views.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, LUDLOW, COLLINS, LIPPINCOTT, BOGERT, HENDRICKSON, ADAMS, NIXON—13.

*For affirmance*—None.